Anthony J. Dreyer
Jordan A. Feirman
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel:  (212) 735-3000

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :
NATIONAL HOCKEY LEAGUE and NHL         :      No. _____
ENTERPRISES, L.P.,                                :
                                                             :
                              Plaintiffs,            :      **COMPLAINT**
                                                             :
                  v.                                     :
                                                             :
THE HOCKEY CUP LLC, ABC STEIN LLC,    :
A&R COLLECTIBLES, INC., and                 :
ROGER S. DEWEY,                                  :
                                                             :
                              Defendants.          :
------------------------------------------------------------ x

        Plaintiffs National Hockey League ("NHL") and NHL Enterprises, L.P. ("NHLE")

(together "Plaintiffs"), by and through their undersigned counsel, for their Complaint against

Defendants The Hockey Cup LLC ("HC LLC"), ABC Stein LLC ("ABC LLC"), A&R

Collectibles, Inc. ("A&R"), and Roger Dewey (collectively "Defendants"), allege upon personal

knowledge with respect to themselves and their own acts, and upon information and belief as to

all other matters as follows:

## NATURE OF THE ACTION

1.      This lawsuit concerns Defendants' flagrant attempt to free-ride on the fame, goodwill, and commercial value of the National Hockey League and its Member Clubs.

2.      Seeking to capitalize on the popularity of the world's premier professional hockey league, Defendants have made extensive, unauthorized use of NHL and Member Club trademarks and trade dress when marketing and selling products to the public.  Indeed, the unauthorized use of NHL intellectual property is the very foundation of Defendants' businesses.

3.      Most saliently, Defendants have marketed and sold a plastic beer stein (the "Infringing Stein") that is a replica of the "Stanley Cup" trophy—the world-famous and iconic trophy that for nearly a century has been awarded to the NHL's annual champion:

**The STANLEY CUP Trophy**                    **The Infringing Stein**




4.      Defendants are well aware that the NHL has for decades owned numerous federal trademark registrations—many of which are incontestable—as well as common law trademark rights in the STANLEY CUP name, nicknames, image, likeness, trade dress, design, and/or shape (hereinafter, the "STANLEY CUP Marks").

5.      Defendants are also well aware that, by virtue of the NHL's longstanding and pervasive use and licensing of the STANLEY CUP Marks in connection with a wide variety of its products and services, those marks are indelibly famous and inextricably associated with the NHL in the minds of hockey fans.

6.      To further exploit that association, Defendants' marketing of the Infringing Stein is designed to strengthen a false impression that the NHL is the source of, a sponsor of, or has some affiliation with Defendants and their products.  For example, Defendants have called the Infringing Stein "The Stanley Stein" and "The Hockey Cup," and have paired images of the Infringing Stein with other NHL trademarks as well as ad copy referencing "the greatest trophy in sports history."  Defendants also use packaging that both imitates the well-known travel case for the actual Stanley Cup trophy and bears city names, color combinations, and logos associated with the "Original Six" NHL Member Clubs:

**Example of The STANLEY CUP Trophy In Case**          **Packaging For The Infringing Stein**




7.      Defendants' willful exploitation of NHL intellectual property extends beyond the Infringing Stein.  Plaintiffs are aware, for example, that Defendants also have marketed and sold counterfeit hockey jerseys bearing, among other federally registered trademarks and copyrighted

materials, the "NHL" word mark and the NHL shield design, and have utilized domain names containing or consisting of NHL trademarks.

8.      The foregoing uses of NHL intellectual property are intended to, and do, deceive consumers into believing that the NHL and its Member Clubs are affiliated with Defendants, and that the NHL has approved or endorsed the use of its valuable trademarks and trade dress in connection with Defendants' businesses and products.  In addition, Defendants' unauthorized use of NHL trademarks and trade dress in connection with unauthorized products, including products that are of inferior quality, has diluted the famous and distinctive nature of those trademarks and trade dress through blurring and tarnishment.

9.      Not only are Defendants willfully violating the NHL's intellectual property rights by selling infringing products, but they also are trying to *usurp* those intellectual property rights. Specifically in connection with the Infringing Stein business, Defendants have applied for federal registrations for two design marks (depicted below) comprised of the term "The Cup" along with hockey indicia (the "Infringing CUP Applications").  Defendants are well aware that the hockey viewing public routinely identifies and knows the Stanley Cup trophy simply as "The Cup," and that term has frequently been used on and in connection with products and services officially licensed by NHLE that refer to or depict the Stanley Cup trophy.



**(U.S.P.T.O. Serial No. 87343070)**          **(U.S.P.T.O. Serial No. 87342406)**

10.      To make matters worse, when the NHL recently filed an opposition to the foregoing applications in the U.S. Patent and Trademark Office, Defendants responded by

seeking *cancellation* of all twelve of the federal "STANLEY CUP" word and design mark registrations cited by the NHL in its opposition as examples of prior use (hereinafter, the "STANLEY CUP Registrations"), including several incontestable registrations held by the NHL.

11.     Defendants' arguments for cancellation, however, are factually and legally bereft, and Defendants lack any legitimate basis to challenge the NHL's longstanding and indisputable trademark rights in connection with the Stanley Cup.

12.     Accordingly, and for the reasons set forth more fully below, Defendants are liable for, among other things, trademark infringement, false association and false designation of origin, trademark dilution, unfair competition, copyright infringement, and violations of New York statutory and common law.  Defendants should be enjoined from any further unauthorized use of NHL intellectual property, and Plaintiffs are entitled to damages in an amount to be determined at trial.

13.     In addition, the Court should reject Defendants' attempts to commandeer the NHL's intellectual property rights.  The Court should issue a declaratory judgment that:  (a) the STANLEY CUP Registrations are valid and are not subject to cancellation on any of the grounds asserted by Defendants in the U.S. Patent and Trademark Office; and (b) Defendants' Infringing CUP Applications should not be granted due to the NHL's priority and the likelihood of confusion that arises from Defendants' use of the proposed new marks.

## THE PARTIES

14.     Plaintiff National Hockey League ("NHL") is an unincorporated association organized as a joint venture and having a business address of 1185 Avenue of the Americas, New York, NY 10036.

15.    Plaintiff NHL Enterprises, L.P. ("NHLE") is a Delaware limited partnership having a principal place of business at 1185 Avenue of the Americas, New York, New York 10036.

16.    Defendant The Hockey Cup LLC ("HC LLC") is an Illinois limited liability company formed in March 2017, having a principal place of business at 851 N. Seton Court, Wheeling, Illinois 60090.  HC LLC is owned, managed, and/or controlled by Defendant Roger Dewey.

17.    Defendant ABC Stein LLC ("ABC LLC") was an Illinois limited liability company formed in July 2015, with a principal place of business at 851 N. Seton Court, Wheeling, Illinois 60090.  ABC LLC was owned, managed, and/or controlled by Defendant Roger Dewey.  Until May 2017, ABC LLC was named "Stanley Stein LLC," and the entity was involuntarily dissolved by the State of Illinois on or about January 12, 2018.

18.    Defendant A&R Collectibles, Inc. ("A&R") is an Illinois corporation formed in 2007, with a listed principal place of business at 1345 Paddock Drive, Wheeling, Illinois 60090, and is owned, managed, and/or controlled by Defendant Roger Dewey.  A&R's actual principal place of business is 851 N. Seton Court, Wheeling, Illinois 60090, and the address was mistakenly not updated on A&R's corporate filings as had been done in the state filings for both ABC LLC and HC LLC.  A&R was incorporated by Defendant Roger Dewey's wife, Anna M. Dewey, who also owns shares in the company.

19.    Defendant Roger Dewey is an individual residing in Wheeling, Illinois who owns, manages, and/or controls HC LLC, ABC LLC, and A&R.

20.    Notwithstanding the fact that HC LLC, ABC LLC, and A&R are separate entities under Illinois law, Mr. Dewey has treated those businesses interchangeably.  In that regard,

documents filed with the State of Illinois indicate that, for example:  (a) Mr. Dewey is the sole "manager" of HC LLC and ABC LLC, and the sole "President" of A&R; and (b) Mr. Dewey's address is identical to the address of each of the respective corporate entities.

21.     Mr. Dewey has dominated the operations of HC LLC, ABC LLC, and A&R, commingled the revenues and funds of those entities, not observed corporate formalities, and in various other ways treated the entities as mere alter egos of each other.

## JURISDICTION AND VENUE

22.     This is an action for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition, trademark infringement, false association, and false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501; violations of New York statutory and common law, including provisions of the New York General Business Law and common law trademark infringement and unfair competition; and declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

23.     This Court has jurisdiction over the federal claims pursuant to 15 U.S.C. § 1121 (original jurisdiction for Lanham Act Claims), 28 U.S.C. §§ 1331 (federal question jurisdiction), and 28 U.S.C. § 1338(a) (original jurisdiction for copyright and trademark claims).  Jurisdiction over the related state law claims, which derive from a common nucleus of operative facts with the federal claims, is based on 28 U.S.C. §§ 1367 (supplemental jurisdiction) and 1338(b) (original jurisdiction for unfair competition claims when joined with related claims under the copyright or trademark laws).

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and this Court may properly exercise personal jurisdiction over Defendants.  Each of the Defendants directly targets

business activities toward consumers in the State of New York and this district, and residents of this district can purchase (and have purchased) Defendants' infringing goods through the fully interactive, commercial Internet stores operated by Defendants themselves (*e.g.*, www.arcollectibles.com, www.hockeycup.com, and www.hockeymug.com) or through postings made by Defendants on third-party websites, such as Amazon.com.

25.     Plaintiffs are aware of at least one sale of an Infringing Stein and of a counterfeit NHL jersey made by Defendants into this district, where the items were directly shipped. Defendants have sold other products consisting of or bearing NHL trademarks in the State of New York and in this district.

26.     Plaintiff NHL maintains headquarters in this district.

27.     Defendants have committed and threaten to commit infringement, dilution, and other torts in the State of New York and in this district, and a substantial part of the events giving rise to Plaintiffs' claims and injuries occurred in this district.

## FACTS COMMON TO ALL CLAIMS

### The NHL, NHLE, NHL Clubs, and Their Valuable Marks

28.     The NHL operates the world's premier professional ice hockey league, consisting of thirty-one (31) Member Clubs (the "NHL Clubs") in the United States and Canada.

29.     Founded in 1917, the NHL has consistently attracted a large public following, both in the United States and worldwide.  Each year, during a nine-month regular season, NHL Clubs play over 1,230 games that are viewed by hundreds of thousands of live spectators. Millions more fans view and follow the respective NHL Clubs and games on television and in electronic and print media.

30.     To identify and distinguish the NHL and its Clubs, and the products and entertainment services that they provide, the NHL and NHL Clubs have adopted and used in commerce, including in the State of New York, certain names, nicknames, terms, logos, symbols, and other trademarks, trade dress (such as uniform designs and color schemes), and identifying indicia (collectively, the "NHL Marks").

31.     NHLE is the exclusive national United States licensee of the NHL Marks, and is authorized by the NHL and the NHL Clubs to both license and enforce rights in the NHL Marks.

32.     A significant aspect of NHLE's business and resulting revenues has been for many years, and continues to be, the merchandising and licensing of NHL Marks.

33.     NHLE has entered into numerous licensing agreements in the United States, authorizing use of NHL Marks on a wide variety of products, including but not limited to apparel (such as hockey jerseys) and beverage containers.  Retail sales revenue for NHLE-licensed merchandise bearing NHL Marks was in the hundreds of millions of dollars for the 2016-2017 fiscal year alone.

34.     NHLE, directly and through authorized licensees, has established and maintained high standards of quality for products bearing NHL Marks (including all of the categories of NHL Marks discussed and/or referenced in this Complaint) and continues to maintain stringent quality control over licensees, manufacturers, and other authorized users of NHL Marks.

35.     As a result of the foregoing continuous and extensive uses, licensing, and policing of the NHL Marks for a variety of goods and services, the substantial advertising and promotion of the NHL and NHL Clubs, and the great popularity of NHL hockey, the NHL Marks are extremely well-known to the public, and have developed tremendous goodwill, value, and strength.  Over the course of many decades—and long prior to any uses of NHL Marks made by

Defendants—consumers have come to associate goods and services bearing or featuring NHL Marks as emanating from, or being sponsored or approved by, the NHL and/or NHL Clubs.

36.     To protect the valuable reputation and goodwill of the NHL and NHL Marks, and to ensure that NHL Marks will serve their intended purpose of designating goods and services emanating from and associated with the NHL, NHLE has established a comprehensive program of enforcement to protect NHL Marks from infringement, dilution, disparagement, counterfeiting, and misappropriation.  Among other things, NHLE regularly investigates and pursues unauthorized uses of the NHL Marks, including through cease and desist letters and, when necessary, lawsuits against third parties.

### The Valuable NHL Marks Being Used by Defendants Without Authorization

### A.     The STANLEY CUP Marks

37.     The Stanley Cup trophy is the oldest trophy competed for by professional athletes in North America.  Since 1926, the trophy has been awarded solely to the annual NHL champion.

38.     Photographs of the Stanley Cup trophy and the distinctive travel box or trunk in which it is transported—which often displays numerous stickers from locations where the Stanley Cup has travelled—are annexed hereto as Exhibit A.

39.     Following each NHL regular season, the NHL champion is determined by a tournament among the top sixteen NHL Clubs comprised of a series of best-of-seven game elimination rounds.  Because the Stanley Cup trophy is awarded to the winner of that tournament, the NHL post-season is referred to by the NHL and by hockey fans as "the STANLEY CUP Playoffs," and the final round in which the two remaining NHL Clubs compete is referred to as "the STANLEY CUP Final."

40.     The STANLEY CUP Playoffs and STANLEY CUP Final are extremely popular sporting events in the United States and worldwide.  The U.S. national broadcasts of the six

10

games of the 2017 STANLEY CUP Final alone were watched by an estimated 28.1 million viewers, with 7 million watching the clinching game.

41.     Logos used by the NHL for the STANLEY CUP Playoffs and STANLEY CUP Finals—such as for the 2018 iterations (shown below)—include visual depictions of the Stanley Cup trophy, which consists of a ridged circular base that narrows into an open bowl shape with curved lines radiating upward from the base of the bowl.

 

42.     Through its widely publicized and epic history, the Stanley Cup trophy has become enormously famous in the United States and worldwide as the paramount achievement in professional ice hockey, and is routinely recognized as one of the greatest and most celebrated—if not *the* greatest and most celebrated—individual trophy in sports. *See, e.g.,* https://www.foxsports.com/southwest/gallery/the-all-time-best-trophies-in-sports-062114 (listing the Stanley Cup trophy as #1 on its list of the "All-Time Best Trophies In Sports," directly ahead of the Heisman Trophy and Olympic Gold Medal); http://bleacherreport.com/articles/697139-the-stanley-cup-10-reasons-why-its-the-greatest-trophy-in-all-of-sports (providing the author's "10 Reasons Why [The Stanley Cup is] the Greatest Trophy in Sports").

43.     In order to satisfy the public's enthusiasm and demand for products that celebrate or commemorate an NHL Club's STANLEY CUP championship and/or NHL hockey more

11

generally, the NHL has exclusively authorized NHLE to license a wide variety of products that

bear the name, nicknames, image, likeness, and/or shape of the STANLEY CUP trophy (the

"STANLEY CUP Marks") in the United States.  Such products have included, for example,

beverageware, beer steins, popcorn makers, Christmas tree ornaments, collectible replicas of the

STANLEY CUP trophy, audio speakers, and coin banks.

44.     Two recent examples of officially licensed STANLEY CUP products are a

Bluetooth speaker in the shape of the trophy and a crystal miniature of the Stanley Cup (with a

commemorative box) containing melted game-used ice from this year's STANLEY CUP Final:

**NHLE-Licensed Bluetooth Speaker**[1]          **NHLE-Licensed Crystal Miniature**[2]

   

45.     The NHL also has exclusively authorized NHLE to license the STANLEY CUP

Marks in the United States to the NHL's sponsors and partners, including those in the beverage

industry, for commercial and promotional uses in connection with a wide variety of goods and

services.  Representative samples of beverage-related products bearing STANLEY CUP Marks

are depicted in Exhibit B.

[1]    http://shop.nhl.com/catalog/product/NHL_Stanley_Cup_Bluetooth_Speaker
[2]    http://shop.nhl.com/league/NHL/team/Washington_Capitals/category/5050/browse/featured
       product/3180452/partnerid/12724/source/ak1944nhl-pla?sku=11065403&targetid=pla-
       326971430769

46.     The NHL and its fans also frequently refer to the Stanley Cup trophy simply as

"THE CUP," which term has been used on officially licensed NHL merchandise.  For example,

officially licensed NHL apparel has borne phrases such as "WE WANT THE CUP,"

"BECAUSE IT'S THE CUP," "QUEST FOR THE CUP," and "BRING HOME THE CUP."

Representative samples of such products are depicted in Exhibit C.

47.     Indeed, the homepage of the NHL's website at the start of this year's Stanley Cup

Playoffs featured a reference to the Stanley Cup trophy as "The Cup":



(www.nhl.com, Apr. 11, 2018.)

48.     Through the foregoing continuous and extensive uses, the STANLEY CUP Marks

have acquired substantial goodwill and are extremely well known to the public, who associate

products and services that bear the STANLEY CUP Marks with the NHL.

49.     Moreover, the NHL owns numerous valid and enforceable federal registrations

for STANLEY CUP Marks (the "STANLEY CUP Registrations"), including the following:

| Trademark or Trade Dress | Reg. No. | Goods/ Services Class | Priority |
|---|---|---|---|
| **STANLEY CUP** | 888,872 | 41 | Use in commerce since at least as early as 1924 |
| | 2,422,903 | 25 | Use in commerce since at least as early as 1981 |
| | 4,686,827 | 14 | Use in commerce since at least as early as December 1991 |
| | 4,767,415 | 14 | Use in commerce since at least as early as December 1991 |
|  | 1,793,016 | 41 | Use in commerce since at least as early as December 1954 |
| | 2,395,418 | 25 | Use in commerce since at least as early as 1981 |
|  | 4,677,429 | 14 | Use in commerce since at least as early as December 1991 |
|  | 3,961,015 | 25 | Use in commerce since at least as early as May 2009 |
| | 3,922,838 | 41 | Use in commerce since at least as early as May 2009 |
|  | 3,922,822 | 41 | Use in commerce since at least as early as April 2009 |
| | 3,922,828 | 25 | Use in commerce since at least as early as April 2009 |

| Trademark or Trade Dress | Reg. No. | Goods/ Services Class | Priority |
|---|---|---|---|
|  | 2,191,055 | 25 | Use in commerce since at least as early as April 1997 |

50.     STANLEY CUP Registrations Nos. 888,872; 2,422,903; 1,793,016; 2,395,418;

3,961,015; 3,922,838; 3,922,822; 3,922,828; and 2,191,055 are incontestable within the meaning

of 15 U.S.C. §§ 1115(b) and 1065.

**B.      The LEAGUE Marks**

51.     In addition to the various STANLEY CUP Marks, the NHL owns, and NHLE

licenses, numerous other valuable trademarks that refer specifically to the "NHL" name or the

NHL Shield (collectively, the "LEAGUE Marks").  Although the NHL Shield has been used in

commerce since at least as early as 1947, the current iteration (depicted immediately below)

has been used in commerce since at least as early as 2005.

52.     The LEAGUE Marks are used in connection with a wide variety of goods and

services—including but not limited to licensed NHL hockey jerseys.  Representative samples

of NHLE-licensed products bearing LEAGUE Marks are depicted in Exhibit D.

53.     As a result of such uses, the LEAGUE Marks have acquired substantial fame, distinctiveness, and goodwill, and consumers have come to associate goods and services bearing the LEAGUE Marks as emanating from, or being sponsored or approved by, the NHL.

54.     The NHL owns numerous valid and enforceable federal registrations for LEAGUE Marks (the "LEAGUE Registrations").  These include, but are not limited to, registrations in International Class 25 (clothing) for the NHL word mark (U.S. Reg. No. 1,962,135) and for the NHL Shield (U.S. Reg. No. 3,248,499).  Both of these registrations expressly encompass use of the marks on "jerseys," and are incontestable within the meaning of 15 U.S.C. §§ 1115(b) and 1065.

55.     A current version of the NHL Shield logo is also the subject of United States Copyright Registration No. VA 1-371-932 (annexed hereto as Exhibit E).  The NHL owns all right, title, and interest to the copyright in the NHL Shield logo, having been assigned such rights from the author and original owner, NHLE.

**Defendants' Marketing and Sales of Infringing Products Bearing NHL Marks**

56.     Seeking to capitalize and free-ride on the value and goodwill of the NHL Marks—and with knowledge that the public identifies goods and services bearing NHL Marks as originating from, being associated with, or being approved by the NHL and/or NHL Clubs— Defendants have manufactured, marketed, and sold products bearing numerous NHL Marks without seeking or obtaining authorization from NHLE or any NHL entity ("Infringing Products").

57.     On information and belief, all pertinent decisions relevant to the manufacture, marketing, sale, and distribution of Infringing Products have been made and/or carried out by

Roger Dewey, who had and continues to have ultimate authority and control over HC LLC, ABC LLC, and A&R.

58.     On information and belief, all funds used and revenues received by Mr. Dewey in connection with Infringing Products have been commingled irrespective of which corporate entity owned by Mr. Dewey was the nominal purveyor of a particular product, and Mr. Dewey has not respected corporate formalities and distinctions in operating his various businesses.

A.     **Defendants' Marketing and Sale of the Infringing Stein**

59.     Since at least as early as May 2016, Defendants have been marketing and/or selling the Infringing Stein—a low quality, clear plastic beer stein in the precise shape and configuration of the Stanley Cup trophy, save for a few immaterial differences:



60.     Adding to the likelihood of confusion created by Defendants, the Infringing Stein is packaged in a box designed to resemble the widely-recognized and publicized travel case or trunk of the Stanley Cup trophy, and bears travel stickers corresponding to the cities where the NHL's "Original Six" Clubs are located (Boston, New York, Detroit, Montreal, Toronto, and Chicago), together with STANLEY CUP Marks.



61.     These "Original Six" city travel stickers are printed in the general color combinations and with other indicia associated with the Original Six Clubs located in those cities.  For example, Boston is depicted in black and gold, the colors of the Boston Bruins NHL Club.  In addition, "Toronto" not only appears in the blue and white colors of the Toronto Maple Leafs hockey club—but also evokes the club's trademarked logos:

**Infringing Stein Box Sticker**          **Toronto Maple Leafs Logo**

          

(*e.g.*, U.S. Reg. No. 2,499,468)

62.     Both the design of the Infringing Stein and the product's packaging, which are replete with NHL Marks, are intended to, and do, create a false association between Defendants and the Infringing Stein on the one hand, and the NHL and NHL Clubs on the other.

18

63.     Additional images of the Infringing Stein and its packaging are annexed hereto as Exhibit F.

64.     In addition to the product design and packaging, Defendants' other marketing and promotional efforts for the Infringing Stein also reflect a deliberate attempt to confuse consumers into believing that Defendants' products are sourced by, authorized by, or affiliated with the NHL and are properly licensed products bearing NHL Marks.

65.     For example, and as discussed in greater detail below with respect to Defendants' Infringing CUP Applications (*see infra* ¶¶ 85-99), Defendants have named their businesses and the Infringing Stein in a manner confusingly similar to the STANLEY CUP Marks.  Defendants initially referred to the Infringing Stein and ABC LLC as "STANLEY STEIN"—lifting the name "STANLEY" directly from the Stanley Cup and using "STEIN" as a synonym of "CUP." Defendants now refer to their business and the Infringing Stein as "THE CUP" and/or "THE HOCKEY CUP," exploiting the common understanding that the NHL and hockey fans refer to the Stanley Cup trophy as "The Cup."

66.     Defendants created logos for "STANLEY STEIN," "THE CUP," and "THE HOCKEY CUP" that include images of hockey sticks, and put those logos on the Infringing Stein itself, as well as on related product packaging and in marketing materials:

      

67.     Defendants' marketing materials contain numerous other false and misleading indications that the Infringing Stein is an officially licensed NHL product.  For example, Defendants' retail websites for the Infringing Stein—www.hockeycup.com, www.hockeymug.com, and www.arcollectibles.com—as well as Defendants' social media pages on Facebook, Instagram, and Twitter, are replete with references to the Stanley Cup, including the iconic annual tradition that the NHL champions "hoist the Cup" overhead.  *See* en.wikipedia.org/wiki/Traditions_and_anecdotes_associated_with_the_Stanley_Cup (describing the history of the "Captain hoisting the cup").  For example:



68.     Additional representative images of Defendants' retail websites and social media postings for the Infringing Stein are annexed hereto as Exhibit G.

69.     Defendants' attempt to associate their businesses and the Infringing Stein with the NHL is reinforced by their repeated pairing of the Infringing Stein with numerous NHL trademarks, merchandise, and other identifying indicia in their social media pages and elsewhere.

70.     For example, on April 13, 2018, Defendants marketed a "Playoff Special" discount for the Infringing Stein that was intentionally timed to coincide with the NHL's 2018 STANLEY CUP Playoffs, which had begun only two days earlier:



71.     On June 8, 2018, the day after the Washington Capitals won the STANLEY CUP

Championship, Defendants marketed the Infringing Stein by inviting consumers to "[c]elebrate

this weekend with 'THE CUP'":



72.     Even during the off-season, Defendants' marketing continues to create an

association between the Infringing Stein and the NHL.  For example, on June 28, 2018—shortly

after the conclusion of the NHL season—one of Defendants' social media promotions for the Infringing Stein stated that "[i]t may be the off season for hockey but not for drinking beer."

73.     Defendants' references to STANLEY CUP Marks and other NHL Marks are additionally damaging to the goodwill and reputation of the NHL because the Infringing Stein, which is not subject to NHLE quality controls, is poorly designed and made cheaply.

74.     In that regard, the Infringing Stein has received a number of consumer complaints and negative reviews.  For example, reviews on Amazon.com include that the product is "impossible to clean," "terribly difficult to fill and to drink out of and results in flat bear [sic]," and that it has "no beer flow."

75.     NHLE has notified Defendants that their activities are infringing, but Defendants have refused to cease those activities, including the marketing and sale of the Infringing Stein.

**B.      Defendants' Marketing and Sale of
         Counterfeit Jerseys Bearing LEAGUE Marks**

76.     Defendants also have marketed and sold hockey jerseys bearing the NHL word mark and the NHL Shield, including—but likely not limited to—a jersey that also bears the marks of the Chicago Blackhawks (the "Counterfeit Jersey").

77.     Defendants have never received authorization from NHLE, or any other NHL entity, NHL Club, or authorized licensee, to use NHL Marks, including LEAGUE Marks, on or in connection with merchandise or apparel, including jerseys.

78.     The Counterfeit Jersey is designed to emulate and be passed off as officially licensed NHL merchandise despite being of significantly lower quality than genuine apparel:

**NHLE-Licensed Merchandise**[3]          **Defendants' Counterfeit Merchandise**



          

          

          

79.     Defendants knew or should have known that the product was not a genuine,

authorized NHL product.

---

3       *See* http://shop.nhl.com/Chicago_Blackhawks_Customized_Jerseys/Mens_Chicago_
        Blackhawks_Fanatics_Branded_Red_Home_Breakaway_Custom_Jersey.

24

80.     The Counterfeit Jersey bears numerous indicia of a non-genuine, low quality good.  For example, the Counterfeit Jersey lacks the NHL hologram hangtag that accompanies all legitimate, licensed NHL goods, has exposed stitching and torn paper, and there are printing mistakes in the execution of the tags.

81.     Defendants have marketed and sold the Counterfeit Jersey on A&R's retail website, www.arcollectibles.com, including to customers in the State of New York and this judicial district.

82.     The Counterfeit Jersey has been marketed and sold on the A&R retail website alongside genuine licensed NHL products.

83.     Upon information and belief, Defendants have sold the Counterfeit Jersey on other websites and through other media alongside genuine licensed NHL products.

84.     Upon information and belief, Defendants have also sold other unauthorized merchandise bearing NHL Marks aside from the Counterfeit Jersey discussed above.

**Defendants' Attempts to Usurp Rights in NHL Marks: The Infringing CUP Applications**

85.     When Defendants began marketing and selling the Infringing Stein, they sought to associate themselves and their product with the NHL and the STANLEY CUP Marks by, among other things:  (a) referring to their business and the Infringing Stein as the "STANLEY STEIN"; (b) using the "STANLEY STEIN" logo with hockey sticks depicted above (*see supra* ¶ 66); and (c) registering and using a retail website with the domain name www.thestanleystein.com.

86.     In connection with sales of the Infringing Stein, Defendants filed intent-to-use applications in August 2015 and May 2016 for U.S. trademark registrations for "THE STANLEY STEIN" (Serial No. 86712633), "STANLEY'S STEIN" (Serial No. 86712626), and the STANLEY STEIN logo (Serial No. 87033093).

87.     These applications were expressly abandoned on or about March 13, 2017, following a complaint from another company that has no relationship to hockey, but that sells a variety of beverage containers such as thermoses and coolers under the brand name "Stanley." At or around the same time, Defendants discontinued use of www.thestanleystein.com.

88.     Defendants, however, were undeterred in their attempt to deceive consumers and falsely affiliate themselves and the Infringing Stein with the NHL by exploiting the STANLEY CUP Marks.  Defendants therefore immediately pivoted to new confusing business and product names such as "THE HOCKEY CUP" and "THE CUP."

89.     Defendants also registered retail websites to sell the Infringing Stein including www.hockeycup.com and www.hockeymug.com.

90.     In connection with the Infringing Stein, Defendants filed intent-to-use trademark applications in the U.S. Patent and Trademark Office in February 2017, for the following two design marks purporting to encompass goods such as "mugs; mugs, not of precious metal; beer mugs; cups and mugs; glass mugs; [and] porcelain mugs" (the "Infringing CUP Applications"):

  

**(U.S.P.T.O. Serial No. 87343070)**          **(U.S.P.T.O. Serial No. 87342406)**

91.     The foregoing Infringing CUP Applications were originally filed on behalf of ABC LLC, but were assigned to HC LLC on or about March 13, 2017—the same date that the "STANLEY STEIN" applications were abandoned.

92.     Defendants have filed the Infringing CUP Applications with full knowledge that the NHL has preexisting trademark rights in the STANLEY CUP Marks, including but not limited to "THE CUP" when used as a shorthand term for the Stanley Cup trophy.

93.     Defendants are well aware of—and, in filing the Infringing CUP Applications, seek to capitalize on—the fact that consumers will be confused and associate "THE CUP" with the STANLEY CUP Marks and the NHL when that term is used in connection with the Infringing Stein, and any other contexts where NHL Marks and/or the Stanley Cup trophy are depicted.

94.     To avoid consumer confusion and protect the goodwill and reputation of the STANLEY CUP Marks, the NHL filed an opposition to the Infringing CUP Applications in the U.S. Patent and Trademark Office on November 15, 2017 (U.S.P.T.O. Opp. No. 91237818, Serial No. 87343070).  In that filing, the NHL cited twelve of its STANLEY CUP Registrations (all listed in the table set forth *supra* at ¶ 49) as well as its common law rights, noting that registration of the Infringing CUP Applications would create a likelihood of confusion and violate the NHL's priority in the STANLEY CUP Marks.

95.     On December 21, 2017, Defendants filed their Answer and Counterclaims in the U.S. Patent and Trademark Office.  In response to a motion to dismiss filed by the NHL, Defendants filed their First Amended Answer and Counterclaims on March 13, 2018 (the "PTO Counterclaims").

96.     In addition to asserting numerous meritless affirmative defenses, Defendants seek cancellation in their entirety of all twelve of the STANLEY CUP Registrations cited in the NHL's opposition.

97.     As set forth in the PTO Counterclaims, Defendants' cancellation proceeding is based primarily on their entirely unsupported and false legal theory that the NHL cannot own any trademark rights related to "STANLEY CUP" as a matter of law because the NHL does not own, or purportedly does not "control" the disposition of, the *physical* Stanley Cup trophy.

98.     That same incorrect theory underlies Defendants' baseless assertion that the NHL committed fraud on the U.S. Patent and Trademark Office when, in its applications for each STANLEY CUP Registration, an NHL representative stated that the NHL is the owner of the mark and to the best of their knowledge no other person or entity has the right to use that mark in commerce.  In the PTO Counterclaims, Defendants' allegations that the NHL representatives knowingly made false statements of fact to the U.S. Patent and Trademark Office are inadequately pled, are made only in conclusory fashion, and are summarily based "on information and belief."

99.     Defendants also baselessly seek "the entire cancellation" of the twelve STANLEY CUP Registrations due to alleged "abandonment" or "lack of use" of the registered marks for certain of the goods listed in those registrations.  Defendants' blanket pleading alleges "on information and belief" that *all* of the goods listed in the STANLEY CUP Registrations were not sold or licensed by the NHL, or have been abandoned "on information and belief."  It is clear, however, that Defendants did little to no investigation to support that false allegation; even a cursory Internet search would have readily revealed to Defendants that the NHL has used the challenged marks on the goods listed in the registrations.

## Irreparable Harm to Plaintiffs From Defendants' Misconduct

100.    In addition to substantial monetary damages, Defendants' conduct has caused, and will continue to cause, Plaintiffs to suffer irreparable harm for which there is no adequate remedy at law.

101.    Defendants' unauthorized use of numerous NHL Marks in connection with their businesses, including but not limited to:  (a) the marketing and sale of the Infringing Stein; (b) the marketing and sale of the Counterfeit Jersey; and (c) the use of NHL Marks in Defendants' business names and web addresses, violates Plaintiffs' exclusive intellectual property rights and

creates an untenable situation in which Plaintiffs cannot exercise control over their trademarks, brands, goodwill, and reputation.

102.    If Defendants are permitted to continue exploiting NHL Marks for their own profit, consumers will continue to be deceived into believing that Defendants and their Infringing Products have been produced, authorized, endorsed, or sponsored by Plaintiffs.  This not only will continue to divert customers away from Plaintiffs (causing damages in an amount that would be difficult to ascertain with certainty), but also deprives Plaintiffs of the ability to exercise critical quality control over products that bear NHL Marks.

103.    The inability to exercise such control is particularly problematic in connection with goods that are poorly designed or of poor quality, such as Defendants' products.  Unless restrained by this Court, consumers will come to associate Plaintiffs and the NHL Marks with shoddy products, damaging Plaintiffs' business and goodwill.  Such association would be harmful to Plaintiffs by blurring and tarnishing the NHL Marks even in any instances where consumers were not confused about the source or endorsement of Defendants' Infringing Products.

**FIRST CLAIM FOR RELIEF**
**(Trademark Infringement – 15 U.S.C. §§ 1114)**

104.    Plaintiffs hereby repeat and re-allege the allegations set forth in the preceding paragraphs of this Complaint.

105.    Plaintiffs are the exclusive owners and/or U.S. licensors of the federally registered NHL Marks, including the STANLEY CUP Registrations and LEAGUE Registrations identified above.

106.    The foregoing federally registered NHL Marks and the goodwill of the businesses associated with them in the United States are valid, of great and incalculable value, are highly

distinctive, and have become uniquely and universally associated in the public mind with Plaintiffs and NHL goods and services upon which the NHL Marks appear, denoting goods and services of the highest quality and reputation.

107.   Without Plaintiffs' authorization or consent, and with full knowledge of Plaintiffs' well-known rights in the NHL Marks, Defendants willfully copied, lifted, misappropriated, counterfeited, and incorporated the federally registered NHL Marks and/or colorable imitations thereof in Defendants' businesses, brands, and products offered for sale and sold in interstate commerce, including but not limited to: (a) using the marks reflected in the STANLEY CUP Registrations, or colorable imitations thereof, in connection with the marketing and sale of the Infringing Stein; and (b) using the marks reflected in the LEAGUE Registrations, or colorable imitations thereof, in connection with the marketing and sale of the Counterfeit Jersey.

108.   Such uses of the federally registered NHL Marks by Defendants are intended to, and are likely to, confuse and deceive consumers into believing, initially or otherwise, that Plaintiffs are affiliated with, associated with, or the source of Defendants' products, and/or that Plaintiffs have sponsored, endorsed, or approved Defendants' products and the use of NHL Marks thereon.

109.   Defendants' acts demonstrate a willful intent to commercially exploit and trade on the goodwill associated with the NHL Marks.

110.   Defendants' use of the NHL Marks has caused, and will continue to cause, irreparable injury to the value and goodwill of the NHL Marks, as well as to Plaintiffs' business, goodwill, and reputation. Unless restrained and enjoined by this Court, such irreparable injury will persist.

111.    In addition, Defendants' willful infringement and/or counterfeiting activities entitle Plaintiffs to monetary damages, including but not limited to Plaintiffs' actual damages, Defendants' profits, statutory and/or treble damages, costs, and attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**(False Association and False Designation of Origin – 15 U.S.C. § 1125(a)(1)(A))**

112.    Plaintiffs hereby repeat and re-allege the allegations set forth in the preceding paragraphs of this Complaint.

113.    Plaintiffs are the exclusive owners and/or U.S. licensors of the NHL Marks, including the STANLEY CUP Marks and LEAGUE Marks identified above.

114.    The NHL Marks and the goodwill of the businesses associated with them in the United States are valid, of great and incalculable value, are highly distinctive, and have become uniquely and universally associated in the public mind with Plaintiffs and NHL goods and services upon which the NHL Marks appear, denoting goods and services of the highest quality and reputation.

115.    Without Plaintiffs' authorization or consent, and with full knowledge of Plaintiffs' well-known rights in the NHL Marks, Defendants willfully copied, lifted, misappropriated, counterfeited, and incorporated the NHL Marks and/or colorable imitations thereof in Defendants' businesses, brands, and products offered for sale and sold in interstate commerce, including but not limited to:  (a) using the STANLEY CUP Marks, including trade dress, in connection with the marketing and sale of the Infringing Stein; (b) creating business names and website addresses that trade on the STANLEY CUP Marks (e.g., hockeycup.com, thestanleystein.com); and (c) using the LEAGUE Marks in connection with the marketing and sale of the Counterfeit Jersey.

116.    Such uses of the NHL Marks by Defendants are intended to, and are likely to, confuse and deceive consumers into believing, initially or otherwise, that Plaintiffs are affiliated with, associated with, or the source of Defendants' products, and/or that Plaintiffs have sponsored, endorsed, or approved Defendants' products and the use of NHL Marks thereon.

117.    Defendants' acts demonstrate a willful intent to commercially exploit and trade on the goodwill associated with the NHL Marks.

118.    Defendants' use of the NHL Marks has caused, and will continue to cause, irreparable injury to the value and goodwill of the NHL Marks, as well as to Plaintiffs' business, goodwill, and reputation.  Unless restrained and enjoined by this Court, such irreparable injury will persist.

119.    In addition, Defendants' willful misconduct entitles Plaintiffs to monetary damages, including but not limited to Plaintiffs' actual damages, Defendants' profits, costs, and attorneys' fees.

## THIRD CLAIM FOR RELIEF
### (Trademark Dilution – 15 U.S.C. § 1125(c))

120.    Plaintiffs hereby repeat and re-allege the allegations set forth in the preceding paragraphs of this Complaint.

121.    Plaintiffs are the exclusive owners and/or U.S. licensors of the NHL Marks, including the STANLEY CUP Marks and LEAGUE Marks identified above.

122.    The NHL Marks used by Defendants are universally and uniquely associated in the public mind with Plaintiffs' goods and services, and are famous and distinctive within the meaning of the Trademark Dilution Revision Act of 2006 because, among other things:

(a) Plaintiffs have used these NHL Marks continuously for many years throughout the United States to promote Plaintiffs' goods and services, resulting in many millions of dollars of sales

and revenues each year; (b) Plaintiffs and their authorized licensees have advertised and publicized these NHL Marks for many years throughout the United States; (c) these NHL Marks are widely recognized by the general consuming public of the United States, and hockey fans in particular; and (d) many of the NHL Marks are the subject of valid and subsisting federal registrations under the Lanham Act.

123.    Without Plaintiffs' authorization or consent, and with full knowledge of Plaintiffs' well-known rights in the NHL Marks, Defendants willfully and pervasively included NHL Marks and other indicia of genuine NHL and NHL Club goods and services in Defendants' products offered for sale and sold in interstate commerce, and in marketing and promotional activities concerning those products, including but not limited to:  (a) using the STANLEY CUP Marks, including trade dress, in connection with the marketing and sale of the Infringing Stein; (b) creating business names and website addresses that trade on the STANLEY CUP Marks (e.g., hockeycup.com, thestanleystein.com); and (c) using the LEAGUE Marks in connection with the marketing and sale of the Counterfeit Jersey.

124.    Defendants' pervasive use of NHL Marks was intended to, and is likely to, dilute these NHL Marks by blurring because Defendants' use impairs these NHL Marks' distinctiveness and lessens their ability to distinguish Plaintiffs' products and services from those of others.  Even if consumers were not confused as to whether Plaintiffs produced or otherwise endorsed Defendants' products (which they are), the presence of NHL Marks on Defendants' products reminds consumers of Plaintiffs' famous marks, and causes consumers to associate those products with Plaintiffs.

125.    Defendants' pervasive use of these NHL Marks also was intended to, and is likely to, dilute these NHL Marks by tarnishment by associating those marks in the minds of consumers

with products that are poorly designed and of low quality, such as the Infringing Stein and Counterfeit Jersey.

126.    Defendants' use of these NHL Marks has caused, and will continue to cause, irreparable injury to the value and goodwill of these NHL Marks, as well as to Plaintiffs' business, goodwill, and reputation.  Unless restrained and enjoined by this Court, such irreparable injury will persist.

127.    In addition, Defendants' willful dilution entitles Plaintiffs to monetary damages, including but not limited to Plaintiffs' actual damages, Defendants' profits, costs, and attorneys' fees.

## FOURTH CLAIM FOR RELIEF
### (Copyright Infringement – 17 U.S.C. § 501)

128.    Plaintiffs hereby repeat and re-allege the allegations set forth in the preceding paragraphs of this Complaint.

129.    The NHL owns all right, title, and interest to the copyright in the NHL Shield logo, which was registered with the U.S. Copyright Office on May 31, 2006 (Reg. No. VA 1-371-932).

130.    A true and correct copy of the certificate of the foregoing registration is annexed hereto as Exhibit E.

131.    Without Plaintiffs' authorization or consent, Defendants willfully copied, displayed, distributed, and/or made derivative works of the NHL Shield logo in connection with the Counterfeit Jersey.

132.    Defendants' infringement of the NHL's copyright has caused irreparable injury to the NHL, and unless restrained and enjoined by this Court, such irreparable injury will persist.

133.   In addition, Defendants' willful infringement entitles the NHL to monetary damages, including but not limited to the NHL's actual damages, Defendants' profits, statutory damages (if elected, up to the maximum allowable amount of $150,000 for each work willfully infringed), costs, and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**(Trademark Dilution and Deceptive Acts and Practices**
**in Violation of New York General Business Law §§ 360-l and 349)**

134.   Plaintiffs hereby repeat and re-allege the allegations set forth in the preceding paragraphs of this Complaint.

135.   Plaintiffs are the exclusive owners and/or U.S. licensors of the NHL Marks, including the STANLEY CUP Marks and LEAGUE Marks identified above.

136.   The NHL Marks and the goodwill of the businesses associated with them in the United States are valid, of great and incalculable value, are highly distinctive, and have become uniquely and universally associated in the public mind with Plaintiffs and NHL goods and services upon which the NHL Marks appear, denoting goods and services of the highest quality and reputation.

137.   Without Plaintiffs' authorization or consent, and with full knowledge of Plaintiffs' well-known rights in the NHL Marks, Defendants willfully copied, lifted, misappropriated, counterfeited, and incorporated the NHL Marks and/or colorable imitations thereof in Defendants' businesses, brands, and products, including but not limited to:  (a) using the STANLEY CUP Marks, including trade dress, in connection with the marketing and sale of the Infringing Stein; (b) creating business names and website addresses that trade on the STANLEY CUP Marks (e.g., hockeycup.com, thestanleystein.com); and (c) using the LEAGUE Marks in connection with the marketing and sale of the Counterfeit Jersey.

138.    Such uses of the NHL Marks by Defendants are intended to, and are likely to, confuse and deceive consumers into believing, initially or otherwise, that Plaintiffs are affiliated with, associated with, or the source of Defendants' products, and/or that Plaintiffs have sponsored, endorsed, or approved Defendants' products and the use of NHL Marks thereon.

139.    Such uses of the NHL Marks are also intended to, and are likely to, impair the distinctiveness of the NHL Marks by lessening the ability of the NHL Marks to distinguish Plaintiffs' products and services from those of others, and closely linking the NHL Marks to poorly designed and low quality goods with which Plaintiffs do not want the NHL Marks affiliated.

140.    Defendants' actions are of a recurring nature, and have caused, and will continue to cause, irreparable injury to the value and goodwill of the NHL Marks, as well as to Plaintiffs' business, goodwill, and reputation.  Unless restrained and enjoined by this Court, such irreparable injury will persist.

141.    In addition, Defendants' willful misconduct entitles Plaintiffs to monetary damages, including but not limited to Plaintiffs' actual damages, Defendants' profits, treble damages and profits, costs, and attorneys' fees.

### SIXTH CLAIM FOR RELIEF
**(Trademark Infringement and Unfair Competition Under New York Common Law)**

142.    Plaintiffs hereby repeat and re-allege the allegations set forth in the preceding paragraphs of this Complaint.

143.    Plaintiffs are the exclusive owners and/or U.S. licensors of the NHL Marks, including the STANLEY CUP Marks and LEAGUE Marks identified above.

144.    The NHL Marks and the goodwill of the businesses associated with them in the United States are valid, of great and incalculable value, are highly distinctive, and have become

uniquely and universally associated in the public mind with Plaintiffs and NHL goods and services upon which the NHL Marks appear, denoting goods and services of the highest quality and reputation.

145.    Without Plaintiffs' authorization or consent, and with full knowledge of Plaintiffs' well-known rights in the NHL Marks, Defendants willfully copied, lifted, misappropriated, counterfeited, and incorporated the NHL Marks and/or colorable imitations thereof in Defendants' businesses, brands, and products, including but not limited to:  (a) using the STANLEY CUP Marks, including trade dress, in connection with the marketing and sale of the Infringing Stein; (b) creating business names and website addresses that trade on the STANLEY CUP Marks (e.g., hockeycup.com, thestanleystein.com); and (c) using the LEAGUE Marks in connection with the marketing and sale of the Counterfeit Jersey.

146.    Such uses of the NHL Marks by Defendants are intended to, and are likely to, confuse and deceive consumers into believing, initially or otherwise, that Plaintiffs are affiliated with, associated with, or the source of Defendants' products, and/or that Plaintiffs have sponsored, endorsed, or approved Defendants' products and the use of NHL Marks thereon.

147.    Defendants' acts demonstrate a willful intent to commercially exploit and trade on the goodwill associated with the NHL Marks.

148.    Defendants' use of the NHL Marks has caused, and will continue to cause, irreparable injury to the value and goodwill of the NHL Marks, as well as to Plaintiffs' business, goodwill, and reputation.  Unless restrained and enjoined by this Court, such irreparable injury will persist.

149.    In addition, Defendants' willful misconduct entitles Plaintiffs to monetary damages.

## SEVENTH CLAIM FOR RELIEF
### (Declaratory Judgment)

150.    Plaintiffs hereby repeat and re-allege the allegations set forth in the preceding paragraphs of this Complaint.

151.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, authorizes the Court to issue a declaratory judgment.

152.    There is an actual controversy between Plaintiffs and Defendants that is ripe for adjudication by the Court with respect to the validity and registrability of the putative marks reflected in Defendants' Infringing CUP Applications.

153.    The STANLEY CUP Marks, including but not limited to those marks that are subject of the STANLEY CUP Registrations, have been in use in commerce by the NHL and NHLE since well before Defendants initiated use of the "CUP" or "HOCKEY CUP" names and designs in connection with the Infringing Stein business (and in the Infringing CUP Applications).

154.    Defendants' use of the "CUP" and "HOCKEY CUP" names and designs, and their attempts to federally register trademark rights in such names and designs, is intended to, and is likely to, confuse and deceive consumers, initially or otherwise, that Plaintiffs are affiliated with, associated with, or the source of Defendants' products, and/or that Plaintiffs have sponsored, endorsed, or approved Defendants' products and the use of NHL Marks thereon.

155.    Defendants' use of the "CUP" and "HOCKEY CUP" names and designs, and their attempts to federally register trademark rights in such names and designs, is intended to, and is likely to, dilute the distinctive quality of the NHL Marks through blurring and tarnishment.

38

156.     Given Plaintiffs' priority in the STANLEY CUP Registrations, and the confusing, misleading, and dilutive nature of Defendants' proposed trademarks in the Infringing CUP Applications, Plaintiffs are entitled to a declaration that the marks that are the subject of the Infringing Cup Applications are likely to cause confusion with the NHL Marks and that the Infringing CUP Applications should not be granted.

## EIGHTH CLAIM FOR RELIEF
### (Declaratory Judgment)

157.     Plaintiffs hereby repeat and re-allege the allegations set forth in the preceding paragraphs of this Complaint.

158.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, authorizes the Court to issue a declaratory judgment.

159.     There is an actual controversy between Plaintiffs and Defendants that is ripe for adjudication by the Court with respect to Defendants' attempt to cancel the NHL's STANLEY CUP Registrations on the grounds of "lack of ownership," fraud on the U.S. Patent and Trademark Office, and abandonment.

160.     The STANLEY CUP Registrations are valid, subsisting, enforceable, and in many instances incontestable.

161.     The fact that Plaintiffs do not own or allegedly "control" the physical Stanley Cup trophy has no bearing on the validity of the STANLEY CUP Marks, the STANLEY CUP Registrations, or the Plaintiffs' ownership thereof.

162.     Because there is no legitimate dispute with respect to Plaintiffs' ownership of the STANLEY CUP Marks, representatives of the NHL did not make any false representations of fact, knowing or otherwise to the U.S. Patent and Trademark Office when applying for the

STANLEY CUP Registrations, and thus no claim of fraud in procurement of those registrations may lie.

163.    Defendants' allegations to the contrary in the Trademark Office proceeding are inadequately pled and are made without any attempt to determine whether or how the marks reflected in the STANLEY CUP Registrations are being used in commerce.

164.    The NHL has used, is using, and/or has a bona fide intention to use the marks reflected in the STANLEY CUP Registrations on or in connection with the goods and services identified in those registrations, and therefore has not abandoned any of its rights.

165.    Accordingly, Plaintiffs are entitled to a declaration that the STANLEY CUP Registrations are valid and are not subject to cancellation on any of the grounds asserted by Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a.      Declare that Defendants have willfully infringed NHL Marks by using and incorporating them in connection with the marketing and sale of the Infringing Stein and Counterfeit Jersey, in violation of the Lanham Act and New York statutory and common law;

b.      Declare that Defendants have willfully engaged in false association, false designation of origin, and unfair competition by pervasive use of NHL Marks in connection with the marketing and sale of the Infringing Stein and Counterfeit Jersey, in violation of the Lanham Act and New York statutory and common law;

c.      Declare that Defendants have willfully diluted NHL Marks by using and incorporating them in connection with the marketing and sale of the Infringing Stein and Counterfeit Jersey, in violation of the Lanham Act and New York statutory and common law;

d.      Declare that Defendants have engaged in copyright infringement by copying, displaying, distributing, and/or making derivative works of the NHL Shield logo;

e.      Declare that the marks that are the subject of the Infringing Cup Applications are likely to cause confusion with NHL Marks and that the Infringing CUP Applications should not be granted, and certify an appropriate order to the Director of the U.S. Patent and Trademark Office in accordance with 15 U.S.C. § 1119;

f.      Declare that Plaintiffs' STANLEY CUP Registrations are valid and are not subject to cancellation, and certify an appropriate order to the Director of the U.S. Patent and Trademark Office in accordance with 15 U.S.C. § 1119;

g.      Permanently enjoin Defendants from any and all use of NHL Marks and/or any other indicia of the NHL or NHL Clubs, including but not limited to in connection with the marketing and sale of the Infringing Stein and Counterfeit Jersey;

h.      Order the seizure, impoundment, and/or destruction of all counterfeit materials bearing NHL Marks in Defendants' possession, including but not limited to the Counterfeit Jersey;

i.      Award Plaintiffs monetary damages in an amount to be determined, including but not limited to actual damages, Defendants' profits, and enhanced, statutory, and/or treble damages as available under the pertinent statutes;

j.      Award Plaintiffs all of their reasonable attorneys' fees and costs pursuant to the fee-shifting provisions of the Lanham Act, 15 U.S.C. § 1117(a), and the Copyright Act, 17 U.S.C. § 505; and

k.      Grant Plaintiffs such other and further relief as the Court deems just and proper.

Date:   July 23, 2018                    Respectfully submitted,


                                         /s/ Anthony J. Dreyer
                                         Anthony J. Dreyer
                                         Anthony.Dreyer@skadden.com
                                         Jordan A. Feirman
                                         Jordan.Feirman@skadden.com
                                         SKADDEN, ARPS, SLATE,
                                           MEAGHER & FLOM LLP
                                         Four Times Square
                                         New York, New York 10036-6522
                                         Telephone:  (212) 735-3000

                                         *Attorneys for Plaintiffs*