UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
NATIONAL HOCKEY LEAGUE and NHL         :        18cv6597(DLC)
ENTERPRISES, L.P.,                     :
                                       :        OPINION AND ORDER
                    Plaintiffs,        :
         -v-                           :
                                       :
THE HOCKEY CUP LLC, ABC STEIN LLC, A&R :
COLLECTIBLES, INC., and ROGER S.       :
DEWEY,                                 :
                    Defendants.        :
                                       :
-------------------------------------- X

Appearances:

For Plaintiffs:
Jordan Adam Feirman
Anthony Joseph Dreyer
Skadden, Arps, Slate, Meagher & Flom LLP (NYC)
Four Times Square
New York, NY 10036

For Defendants:
Konrad Sherinian
Depeng Bi
The Law Offices of Konrad Sherinian, LLC
1755 Park Street, Suite # 200
Naperville, IL 60563

DENISE COTE, District Judge:

     This is a trademark dispute between plaintiffs National

Hockey League and NHL Enterprises, L.P. ("the NHL") and

defendants The Hockey Cup LLC ("Hockey Cup"), ABC Stein LLC

("ABC"), A&R Collectibles, Inc. ("A&R"), and Roger S. Dewey

("Dewey") (collectively "Defendants").  The dispute centers on

the NHL's allegation that the Defendants have unlawfully

marketed and sold a plastic beer stein that replicates the NHL's Stanley Cup trophy.  All Defendants have moved to dismiss the complaint for lack of venue, or, in the alternative to transfer the matter to the Northern District of Illinois.  The Defendants have also moved to dismiss the NHL's trade dress claims for failure to state a claim and Dewey has moved to dismiss the complaint for lack of personal jurisdiction.  For the reasons that follow these motions are denied.

## Background

The following facts are taken from the complaint and the parties' submissions on these motions.  While the motion to dismiss will be assessed in light of the complaint's allegations, which are construed in the NHL's favor, for purposes of the Defendants' motions to dismiss for lack of venue, to transfer, and for lack of personal jurisdiction only, facts are also taken from the parties' submissions in connection with those motions.

The NHL operates a well-known professional hockey league that consists of thirty-one member clubs in the United States and Canada.  NHL Enterprises, L.P., one of the plaintiffs in this case, has its principle place of business in this district, and the other, the National Hockey League, is an unincorporated association with a business address in this district.  The NHL

member teams play over 1,230 games per year that are viewed live by hundreds of thousands of spectators and watched on television and followed in electronic and print media by millions more. The Stanley Cup trophy is a trophy awarded to the winner of the NHL championship tournament, often referred to as the Stanley Cup Playoffs or Stanley Cup Final, at the end of each NHL season.

The NHL and its member teams use certain names, terms, logos, symbols, and other trademarks, trade dress, and identifying indicia to identify and distinguish the NHL, its member teams, and their products and services ("the NHL Marks"). The NHL licenses merchandise bearing the NHL Marks, including beverage containers and apparel, which generates significant sales revenue. Through continuous and extensive use and substantial advertising of the NHL Marks and because of the popularity of NHL hockey, the NHL Marks have become well-known and consumers have come to associate goods and services bearing or featuring NHL Marks as emanating from or being sponsored or approved by the NHL. The NHL regularly investigates and pursues, including through cease and desist letters and litigation, unauthorized uses of the NHL Marks in order to protect their rights in these NHL Marks.

These NHL Marks include logos that use a visual depiction of the Stanley Cup trophy and products that bear the name or

likeness of the Stanley Cup.  The complaint includes a visual depiction of the Stanley Cup, which is described in the complaint as consisting of a ridged circular base that narrows into an open bowl shape with curved lines radiating upward from the base of the bowl.  The NHL licenses a wide variety of products that bear the name, nicknames, images, likeness and/or shape of the Stanley Cup trophy, including beverageware, beer steins, collectible replicas, and Christmas tree ornaments. Some of these products refer to the Stanley Cup trophy as "the cup."

The NHL owns at least eleven trademark registrations for the words "Stanley Cup" or for depictions or designs of the trophy.[1]  One of these trademark registrations, registration number 4,677,429, which is listed in the complaint alongside a depiction of the design, is described in the United States Patent and Trademark Office Registration as "consist[ing] of a three-dimensional configuration of a trophy with a ridged circular base, that narrows into an open bowl shape with curved lines radiating upward from the base of the bowl."  The NHL also

---

[1] The complaint lists twelve such trademark registrations, but the NHL informed the Court by letter on December 20, 2018 that it would be voluntarily cancelling the federal registration for one of these registrations and would no longer rely on this registration in the present litigation.

owns trademark and copyright registrations in other NHL Marks, including a logo depicting the NHL shield.

The Hockey Cup, ABC, and A&R are all Illinois companies with principal places of business in Wheeling, Illinois. Dewey resides in Wheeling, Illinois and owns, manages, and/or controls the Hockey Cup, ABC, and A&R. These companies operate interactive websites through which individuals located across the country can purchase merchandise. In addition, the companies have posted merchandise for sale on websites such as Amazon.com.

Since at least May 2016, the Hockey Cup, ABC, and A&R have marketed and sold a clear plastic beer stein in the shape of the Stanley Cup trophy ("the Stein").



The STANLEY CUP Trophy



The Infringing Stein

According to the NHL, the Stein is poorly designed, cheaply made, and has received numerous consumer complaints and negative

reviews by consumers on Amazon.com.  The Stein is packaged and
sold in a box that resembles the travel trunk in which the
Stanley Cup trophy is transported and which bears logos similar
to those of the six original NHL teams.  Defendants have
marketed the Stein using the words "the cup" and "Stanley" and
using references to the Stanley Cup trophy tournament and to the
NHL generally, including marketing timed to coincide with the
Stanley Cup Playoffs.

The Defendants have also marketed and sold hockey jerseys
bearing the NHL word mark and NHL shield logo without
authorization from the NHL or any authorized licensee.  These
jerseys lack the NHL hologram hangtag that accompanies all
licensed NHL goods and, according to the NHL, bear indicia of
low quality production, including exposed stitching and printing
mistakes on the tags.  The Defendants marketed and sold these
jerseys on A&R's website.  According to the NHL, Dewey makes all
pertinent manufacturing, marketing, sales, and distribution
decisions for all three companies with regard to the allegedly
infringing products.

In the complaint, the NHL alleges that the Defendants have
sold at least one Stein and one counterfeit NHL jersey into the
Southern District of New York ("the SDNY").  According to a
declaration submitted by the Defendants in support of their
motions to dismiss for improper venue and lack of personal

jurisdiction, the jersey that was sold into the SDNY was purchased by a paralegal for the law firm that was representing the NHL at the time in its dispute with the Defendants.

In February 2017, the Defendants filed intent-to-use trademark applications in the U.S. Patent and Trademark Office ("USPTO") for the following two design marks, to encompass goods including "mugs" and "beer mugs."


(U.S.P.T.O. Serial No. 87343070)


(U.S.P.T.O. Serial No. 87342406)

On November 15, 2017, the NHL filed an opposition to these applications with the USPTO. On March 13, 2018, in response to a motion to dismiss filed by the NHL, the Defendants filed an amended answer and counterclaims in the USPTO, in which they sought cancellation of the NHL's Stanley Cup registrations.

The NHL filed this suit on July 23, 2018, alleging trademark infringement, false association and false designation of origin, and trademark dilution under federal law and copyright infringement, trademark dilution, deceptive acts and practices, trademark infringement, and unfair competition in violation of New York law. The Defendants filed the motions to dismiss that are the subject of this Opinion on September 28, 2018. The motions became fully submitted on November 9.

**Discussion**

<u>Venue</u>

The Defendants have moved to dismiss the case under Rule 12(b)(3) for lack of proper venue.  28 U.S.C. § 1391 ("Section 1391") provides, <u>inter alia</u>, that

> [a] civil action may be brought in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

28 U.S.C. § 1391(b).  The Second Circuit has cautioned district courts "to take seriously the adjective 'substantial'" in Section 1391, and has stated that "for venue to be proper, <u>significant</u> events or omissions <u>material</u> to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."  <u>Gulf Ins. Co. v. Glasbrenner</u>, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original).  "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue."  <u>Daniel v. Am. Bd. of Emergency Med.</u>, 428 F.3d 408, 433 (2d Cir. 2005).  A plaintiff faced with a motion to dismiss for improper venue may choose to rely on pleadings and affidavits to oppose the motion.  <u>Gulf Ins. Co.</u>, 417 F.3d at 355.  In such cases, "the plaintiff need only make a <u>prima facie</u> showing of

venue." Id. (citation omitted). "[C]ourts are not, in general, required to determine the 'best venue,' but merely a logical one with a substantial connection to the litigation." Reliance Ins. Co. v. Polyvision Corp., 474 F.3d 54, 59 (2d Cir. 2007).

Venue is proper in this district. The NHL is headquartered in the district and any injuries resulting from the alleged violation of the NHL's intellectual property rights thus would have occurred, at least in part, in this district. Moreover, the complaint alleges that the Defendants engage in online marketing of their allegedly infringing products, and the Stein may be purchased through the Defendants' interactive websites and shipped to consumers in this district. The NHL also knows of at least one instance in which the Stein and a jersey were sold by this means and shipped to this district. The fact that these allegedly infringing items were purchased by an investigator employed by the NHL's law firm does not make venue improper.

Transfer

As an alternative to dismissal for lack of venue, the Defendants seek transfer of this case to the Northern District of Illinois. Section 1404 provides in relevant part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28

U.S.C. § 1404(a).  The statute requires the movant to first establish that the proposed transferee district is a district in which the action "might have been brought."  Only after this prerequisite is established are considerations of convenience and the interests of justice balanced.

Once Section 1404's "might have been brought" prerequisite is met, a district court has "broad discretion" to grant or deny motions to transfer under Section 1404.  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).  A court makes its determination based on "notions of convenience and fairness ... on a case-by-case basis."  Id.  The movant bears the burden of establishing by clear and convincing evidence that transfer is warranted.  N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 113-14 (2d Cir. 2010).

Generally speaking, there is "a strong presumption in favor of the plaintiff's choice of forum," and, indeed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 154 (2d Cir. 2005) (citation omitted) (deciding forum non conveniens motion).  "In the typical case not involving a forum-selection clause, a district court considering a Section 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations."  Atl.

Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571

U.S. 49, 62 (2013).

> Factors relating to the parties' private interests
> include relative ease of access to sources of proof;
> availability of compulsory process for attendance of
> unwilling, and the cost of obtaining attendance of
> willing, witnesses; possibility of view of premises,
> if view would be appropriate to the action; and all
> other practical problems that make trial of a case
> easy, expeditious and inexpensive.  Public-interest
> factors may include the administrative difficulties
> flowing from court congestion; the local interest in
> having localized controversies decided at home; [and]
> the interest in having the trial of a diversity case
> in a forum that is at home with the law.  The Court
> must also give some weight to the plaintiffs' choice
> of forum.

Id. at 62 n.6 (citation omitted).

Although this lawsuit could have been brought in the

Northern District of Illinois, the Defendants have not

established by clear and convincing evidence that transfer is

warranted.  The NHL's choice of forum is entitled to significant

deference.  It is efficient for it to file suit in the district

in which it is headquartered and there is no showing that its

choice of this district was made for any wrongful tactical

purpose.  See Pollux Holding Ltd. v. Chase Manhattan Bank, 329

F.3d 64, 71 (2d Cir. 2003) (deciding a forum non conveniens

motion).

As to the private interests of the parties, the Defendants

have not convincingly asserted that producing their relevant

documents or exhibits in this district would be burdensome and

the NHL and all of the witnesses it has identified are based in this district. While the Defendants reside in the Northern District of Illinois and assert that at least one potential witness who may testify regarding their social media marketing of the Stein resides in the Northern District of Illinois, the Defendants have not demonstrated that the overall convenience of the parties favors transfer.

The public-interest factors also weigh in favor of denying transfer. Several of the NHL's claims arise under New York law, a body of law with which this district is likely more familiar than is the Northern District of Illinois. This controversy involves the selling and marketing through the internet of allegedly infringing consumer products. As such its subject matter is not of particular local interest. In sum, the various private and public interests at play in this case militate in favor of denying the Defendants' motion to transfer.

Personal Jurisdiction

Defendant Roger Dewey also seeks to dismiss the case under Rule 12(b)(2) for lack of personal jurisdiction. "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 342 (2d Cir. 2018) (citation omitted). "In evaluating whether the requisite showing has been made, [a court must] construe the pleadings and

any supporting materials in the light most favorable to the plaintiff[].” Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013) (“Licci II”).  A plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would “lack the factual specificity necessary to confer jurisdiction.”  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998).

A federal court addressing federal trademark claims has personal jurisdiction to the extent provided by New York’s long-arm statute, CPLR Section 302(a), which provides for specific jurisdiction over a party.  See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010).  According to Section 302:

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, ...; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, ... if he ... (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y.C.P.L.R. § 302.

To determine whether jurisdiction exists under Section 302(a)(1), "a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (citation omitted).  "A defendant need not physically enter New York State in order to transact business, so long as the defendant's activities here were purposeful." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012) (citation omitted).  "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted).  "[A] website's interactivity -— that is, the amount of back-and-forth between a consumer and a seller -— will often be useful for determining whether a seller purposefully availed himself of the privilege of conducting activities within a state, thus invoking the benefits and protections of its laws."  Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs., 769 F.3d 105, 115, n.6 (2d Cir. 2014) (citation omitted).

If a defendant has transacted business within the state within the meaning of Section 302(a)(1), state law provides a

basis for jurisdiction if "the claim asserted . . . arise[s] from that business activity."  Eades, 799 F.3d at 168 (citation omitted).  "[S]ection 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted."  Chloe, 616 F.3d at 170 (citation omitted).  "[S]ection 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York.  Trademark infringement is just such a tort."  Id. at 171 (citation omitted).

Even if authorized by state law, personal jurisdiction may nonetheless be improper if it would violate a defendant's due process rights.

> Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  Where, as in this case, the plaintiffs ask the district court to assert specific jurisdiction over the defendants, the jurisdictional inquiry focuses on the affiliation between the forum and the underlying controversy.

Licci II, 732 F.3d at 169-70 (citation omitted).  "Where the defendant has had only limited contacts with the state it may be

appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." SPV Osus, 882 F.3d at 344 (citation omitted). The Second Circuit has observed that it would be a "rare" case where New York C.P.L.R. § 302(a)(1) was satisfied by a defendant's transaction of business but the assertion of specific jurisdiction arising out of the transaction nonetheless violated due process. See Licci II, 732 F.3d at 170.

The NHL has alleged that Dewey is responsible for the allegedly infringing activities of the three corporate Defendants in this case and that he was personally involved in the design, marketing, and sales of the Stein and was personally involved in the purchase and sales of the allegedly counterfeit jerseys. Dewey's declaration submitted in support of his motion to dismiss confirms much of this personal involvement and confirms that he is the president of A&R and the sole manager of ABC and Hockey Cup. The business transactions of the Defendant companies in the forum state may properly be imputed to Dewey.

This Court has personal jurisdiction over Dewey under Section 302(a)(1) and this jurisdiction comports with due process. Dewey and his companies have transacted business in New York by operating interactive websites through which consumers in New York can purchase the Stein, jerseys, and other products. Dewey and his companies have also sold and shipped at

least one Stein and one jersey to New York.  This purposeful
availment of the forum state is also closely tied to the claims
asserted by the NHL: the business transactions conducted by
Dewey in New York are sales of the allegedly infringing products
that form the basis for the NHL's claims in this suit.  Dewey's
motion to dismiss for lack of personal jurisdiction is therefore
denied.

Failure to State a Claim

     Defendants appear to seek to dismiss all of the NHL's
federal and state claims involving trade dress rights under Rule
12(b)(6) for failure to state a claim.  When a party moves to
dismiss for failure to state a claim upon which relief can be
granted under Fed. R. Civ. P. 12(b)(6), a court must "accept all
allegations in the complaint as true and draw all inferences in
the non-moving party's favor."  LaFaro v. N.Y. Cardiothoracic
Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).
The complaint will survive the motion to dismiss as long as it
contains "sufficient factual matter, accepted as true, to state
a claim to relief that is plausible on its face."  Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  "A
complaint is deemed to include any written instrument attached
to it as an exhibit or any statements or documents incorporated
in it by reference."  Nicosia v. Amazon.com, Inc., 834 F.3d 220,
230 (2d Cir. 2016) (citation omitted).

17

a. Lanham Act and Common Law trade dress claims

The NHL brings a trade dress claim under Section 43 of the Lanham Act, which provides:

> Any person who, on or in connection with any goods ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). "[C]auses of action under both the Lanham Act and New York State common law . . . are composed of the same elements. We therefore analyze them together." Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 101 n.6 (2d Cir. 2010) (citation omitted).

To plead a claim of trade dress infringement involving the overall appearance of a product, a plaintiff must offer (1) "a precise expression of the character and scope of the claimed trade dress." Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 381 (2d Cir. 1997). A plaintiff seeking relief for trade dress infringement must also allege that (2) the claimed trade dress is non-functional; (3) the claimed trade dress has secondary meaning; and (4) there is a likelihood of confusion between the plaintiff's goods and the defendant's.

18

See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115-16 (2d Cir. 2001) (on appeal from jury verdict).

In any claim of trade dress infringement, the plaintiff must offer "a precise expression of the character and scope of the claimed trade dress."  Landscape Forms, 113 F.3d at 381.  A product's trade dress "encompasses the overall design and appearance that make the product identifiable to consumers."  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 269 F.3d 114, 118 (2d Cir. 2001).  A plaintiff must specify its trade dress by "articulat[ing] the design elements that compose" it.  Yurman, 262 F.3d at 116.

The NHL has stated a claim for trade dress infringement under the Lanham Act.  It lists its registration for its Stanley Cup trade dress in the complaint.  The complaint also asserts that the NHL has long been the exclusive user of the trade dress and that the trade dress is widely advertised, publicized, and associated in the minds of the public with the NHL such that it has achieved secondary meaning.  The complaint contains facts sufficient to show likelihood of confusion, including that the Defendants' Stein is similar to its Stanley Cup mark, that the Defendants market the Stein to NHL fans and customers, and that the NHL's Marks bearing the Stanley Cup design are highly distinctive.

Finally, while the NHL does not explicitly state in its complaint that its products bearing the Stanley Cup design are non-functional, it describes developing these products "[i]n order to satisfy the public's enthusiasm and demand for products that celebrate or commemorate an NHL Club's STANLEY CUP championship." Although the Defendants argue that the cup portion of the design could be used to drink out of and is therefore functional and thus unprotectable, the claimed trade dress is not so restricted. See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 32 (2d Cir. 1995). The complaint contains sufficient facts regarding the trade dress's non-functional use to state a claim under the Lanham Act. For the same reasons, the NHL has also stated a claim for trade dress infringement under New York common law.

b. Dilution claims

The NHL also brings federal and state trade dress dilution claims. In dilution actions brought under the Lanham Act, "the person who asserts trade dress protections has the burden of proving that ... the claimed trade dress, taken as a whole, is not functional and is famous." 15 U.S.C. § 1125(c)(4)(A). "[A] mark is famous if it widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2).

A court is to "consider all relevant factors" when determining a mark's fame, including:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

> (iii) The extent of actual recognition of the mark.

15 U.S.C. § 1125(c)(2)(A). "[T]he element of fame is the key ingredient" to a successful federal dilution claim, because it is "the one that most narrows the universe of potentially successful claims." Savin Corp. v. Savin Grp., 391 F.3d 439, 449 (2d Cir. 2004).

The NHL has adequately plead claims for dilution under the Lanham Act and New York State common law. As discussed above, the complaint adequately alleges non-functionality. The complaint also includes assertions that the Stanley Cup trophy, which forms the basis for the trade dress, "has become enormously famous" and is "recognized as one of the greatest and most celebrated –- if not the most celebrated –- individual trophy in sports." These assertions are supported by citations to news articles describing the trophy in superlative terms.

c. Deceptive Acts and Practices

The NHL also seeks to enforce trade dress rights through a deceptive acts and practices claim under New York law. Section

349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business ... or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  To state a claim for deceptive practices under New York Law "a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances."  Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018).  The party challenging an act or practice under Section 349 must show that: (1) the defendant engaged in a consumer-oriented act, (2) the consumer-oriented act was misleading in a material way, and (3) the plaintiff consequently suffered injury.  See Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000).  Conduct is consumer-oriented where a defendant engages in "an extensive marketing scheme [or] multi-media dissemination of information to the public," as well as where it reflects "a standard or routine practice that [could] potentially affect[] similarly situated consumers."  N. State Autobahn, Inc. v. Progressive Ins. Grp., 953 N.Y.S.2d 96, 101 (2d Dep't 2012) (citation omitted).  "The kinds of trade practices which have been considered as deceptive in the past include false advertising, . . . [and] misrepresentation of the origin, nature or quality of the product."  Teller v. Bill Hayes, Ltd., 630 N.Y.S.2d 769, 773 (2d Dep't 1995) (citation omitted).  "Section 349 is violated when misleading conduct is

directed at the public at large.  There is, of course, a well-recognized public interest in prohibiting conduct that confuses or deceives consumers."  MZ Wallace Inc. v. Fuller, No. 18CV2265(DLC), 2018 WL 4007645, at *5 (S.D.N.Y. Aug. 22, 2018).

The NHL has adequately plead a claim for deceptive acts and practices.  The complaint alleges that the Defendants misrepresented the origin of its Stein in advertising and marketing directed at the public and that the public was confused as to the Stein's origin as a result of the Defendants' actions.

d. Unfair competition

The NHL also brings a claim under Section 360-l of the New York General Business Law, which provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

N.Y. Gen. Bus. Law § 360-l.  "New York law accords protection against dilution to marks that are distinctive as a result of acquired secondary meaning as well as to those that are inherently distinctive."  N.Y. Stock Exch., Inc. v. New York, New York Hotel, LLC, 293 F.3d 550, 557 (2d Cir. 2002).  "We analyze claims under New York's unfair competition [law] in a

23

similar fashion to how we analyze claims under the Lanham Act."
Louis Vuitton Malletier, v. Dooney & Bourke, Inc., 454 F.3d 108,
119 (2d Cir. 2006).  In addition to likelihood of confusion,
however, "[a] plaintiff claiming unfair competition under New
York law must show that the defendant acted in bad faith."
Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 485 (2d
Cir. 2005).  "In determining a defendant's intent, actual or
constructive knowledge of the prior user's mark or dress may
indicate bad faith," but not necessarily.  Paddington Corp. v.
Attiki Importers & Distributors, Inc., 996 F.2d 577, 586 (2d
Cir. 1993) (citation omitted).  "[T]he intent to compete by
imitating the successful features of another's product is vastly
different from the intent to deceive purchasers as to the source
of the product."  Nora Beverages, 269 F.3d at 124 (citation
omitted).

As discussed above the NHL has adequately alleged a
likelihood of confusion in its complaint.  It has also
adequately alleged bad faith.  The NHL asserts in the complaint
that the Defendants' product design and packaging of its Stein
"deliberate[ly] attempt to confuse consumers into believing that
Defendants' products are sourced by, authorized by, or
affiliated with the NHL."  The complaint also alleges that the
Defendants continued to market and sell their allegedly
infringing Stein after the NHL notified the Defendants that

their products infringed on the allegedly protected trade dress.
These allegations are sufficient to state a claim for unfair
competition under New York law.

   e. Sears-Compco preemption

   Finally, in what appears to be a Rule 12(b)(6) argument,
the Defendants claim that the relief the NHL seeks under its
Lanham Act claims as well as under its state law claims is
foreclosed by the Supreme Court's decisions in Sears, Roebuck &
Co. v. Stiffel Co., 376 U.S. 225 (1964), and Compco Co. v. Day-
Brite Lighting, Inc., 376 U.S. 234 (1964) ("Sears-Compco").
This doctrine, however, does not apply to the trademark claims
asserted in this lawsuit.  As the Second Circuit explained
almost three decades ago:

> In Sears-Compco the Court held merely that a state may
> not, through its law banning unfair competition,
> undermine the federal patent laws by prohibiting the
> copying of an article that is protected by neither a
> federal patent nor a federal copyright. . . .  This
> consideration does not apply in a trademark
> infringement action where the plaintiff does not
> assert exclusive rights to the sale of a product but
> merely to a mark indicating its origin or sponsorship.

Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604
F.2d 200, 204 (2d Cir. 1979).  To the extent that the Defendants
rely on Sears-Compco to argue that the NHL has failed to state a
claim upon which relief can be granted, this argument is
unavailing.

## Conclusion

The Defendants' September 28 motions to dismiss and transfer are denied in full.


Dated:   New York, New York
         January 8, 2019

_____
DENISE COTE
United States District Judge